IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| VIOLET GOODWIN, | ) | 8:16CV458 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM** |
| v. | ) | **AND ORDER** |
| | ) | |
| TIMOTHY DUNNING , | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff filed her Complaint on October 7, 2016 (Filing No. 1), and was granted leave to proceed in forma pauperis on October 12, 2016 (Filing No. 5). The court now conducts an initial review of the Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2).

## I.  SUMMARY OF COMPLAINT

Liberally construing the Complaint, Plaintiff alleges that on September 15, 2016, she applied for a certificate to purchase a handgun under Neb. Rev. Stat. § 69-2404, and that her application was denied on September 20, 2016, by Defendant, the Douglas County Sheriff, for the following stated reasons:

> You have a Protection Order Violation, Domestic Violence related, on file with the Omaha Police Department dated September 18, 2013 . You were ticketed by the Nebraska Humane Society for Animal Care on June 9, 2005. On January 20, 2006 this charge was amended to Animal Cruelty, receiving a $75.00 fine. Also, based on outside information obtained that can not be released in this manner, you will be denied a handgun purchase certificate at this time.

(Filing No. 1 at CM/ECF p. 7 ("Notice of Denial")). Plaintiff claims Defendant violated her Second Amendment right to bear arms and deprived her of due process and equal protection of the laws.

## II.  APPLICABLE STANDARDS ON INITIAL REVIEW

The court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

## III.  DISCUSSION OF CLAIMS

Nebraska law provides that "[a]ny person desiring to purchase ... a handgun shall apply with the chief of police or sheriff of the applicant's place of residence for a certificate.... An applicant shall receive a certificate if he or she is twenty-one years of age or older and is not prohibited from purchasing or possessing a handgun by 18 U.S.C. § 922." Neb. Rev. Stat. § 69-2404. Persons who are prohibited from

purchasing a handgun by the federal statute include convicted felons, fugitives from justice, drug users and addicts, "mental defectives" and persons committed to mental institutions, illegal aliens and holders of non-immigrant visas, former members of the Armed Forces who were dishonorably discharged, persons who have renounced their U.S. citizenship, individuals who are subject to certain restraining orders, and persons who have been convicted of crimes of domestic violence. *See* 18 U.S.C. § 922(g); *see also* Neb. Admin. R. & Regs. Tit. 272, Ch. 22, § 010.

"The Chief of Police or Sheriff to whom the application was submitted, or his or her designee, shall conduct an investigation of the applicant which shall include at a minimum an inquiry of the Nebraska criminal history record, National Instant Criminal Background Check System (NICS) and the records of the agency to which application is made." Neb. Admin. R. & Regs. Tit. 272, Ch. 22, § 009.01. "The investigation may include, but is not limited to, public records of all courts and government offices including notations or warrants and commitment orders issued by courts and mental health boards; interviews of individuals with reliable and pertinent information about the applicant." *Id.*, § 009.02.

"Upon the receipt of an application for a certificate, the chief of police or sheriff shall issue a certificate or deny a certificate and furnish the applicant the specific reasons for the denial in writing. The chief of police or sheriff shall be permitted up to three [business] days in which to conduct an investigation to determine whether the applicant is prohibited by law from purchasing or possessing a handgun.... No later than the end of the three-day period the chief of police or sheriff shall issue or deny such certificate and, if the certificate is denied, furnish the applicant the specific reasons for denial in writing." Neb. Rev. Stat. § 69-2405; *see also* Neb. Admin. R. & Regs. Tit. 272, Ch. 22, § 006.

"Any person who is denied a certificate ... or who has not been issued a certificate upon expiration of the three-day period may appeal within ten days of receipt of the denial ... to the county court of the county of the applicant's place of residence.

The applicant shall file with the court the specific reasons for the denial .... The court shall issue its decision within thirty days of the filing of the appeal." Neb. Rev. Stat. § 69-2406; *see also* Neb. Admin. R. & Regs. Tit. 272, Ch. 22, § 008. If the county court issues an adverse decision, further appeals may be taken. *See Miller v. Brunswick, 571 N.W.2d 245, 247 (Neb. 1997)*.

### A. Second Amendment

The Second Amendment to the United States Constitution provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." This provision has been held to confer an individual right to possess handguns, *Dist. of Columbia v. Heller*, 554 U.S. 570, 592 (2008), and to apply to the States through the Due Process Clause of the Fourteenth Amendment, *see* McDonald v. City of Chicago, 561 U.S. 742, 791 (2010).

Plaintiff does not claim that Nebraska's statutory and regulatory scheme for the certification of handgun purchases is unconstitutional in any respect. She instead claims that Defendant, who is responsible for issuing certificates in Douglas County, violated her civil rights by denying her application, and she seeks damages and injunctive relief under 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Plaintiff generally alleges that she "has a 2nd Amendment right to bear arms" (Filing No. 1 at CM/ECF p. 2), but does not specifically allege that she is entitled to a certificate under Nebraska law. That is to say, Plaintiff does not allege that "she is twenty-one years of age or older and is not prohibited from purchasing or possessing a handgun by 18 U.S.C. § 922." Neb. Rev. Stat. § 69-2404. Plaintiff only alleges that she "has no felony conviction of any kind" (Filing No. 1 at CM/ECF pp. 2-3). Even though Defendant's statement of reasons for denying Plaintiff a certificate may be

4

deficient,[1] it is incumbent upon Plaintiff to plead and prove that she qualifies for a certificate in order to establish a Second Amendment violation.

Plaintiff sufficiently alleges that Defendant acted under color of state law in denying the handgun purchase certificate,[2] but she does not specify the capacity in which Defendant is sued. Where a plaintiff fails to "expressly and unambiguously" state that a public official is sued in his individual capacity, the court "assume[s] that the defendant is sued only in his or her official capacity." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). A claim against an individual in his official capacity is, in reality, a claim against the entity that employs the official, in this case, Douglas County. *See Parrish v. Luckie*, 963 F.2d 201, 203 n.1 (8th Cir. 1992) ("Suits against persons in their official capacity are just another method of filing suit against the entity. A plaintiff seeking damages in an official-capacity suit is seeking a judgment against the entity.") (internal citations omitted)).

The County may only be liable under section 1983 if its "policy" or "custom" caused a violation of Plaintiff's constitutional rights. *See Doe By and Through Doe v. Washington Cnty.*, 150 F.3d 920, 922 (8th Cir. 1998) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). There is "an important distinction between claims based on official policies and claims based on customs." *Jenkins v. County of Hennepin*, 557 F.3d 628, 633 (8th Cir. 2009).

---

[1] The fact that Plaintiff reportedly violated a protection order in 2013 does not establish that she currently is subject to a protection order which would make her ineligible to possess a firearm under 18 U.S.C. § 922(g)(8). The fact that Plaintiff reportedly was fined for animal cruelty in 2006 would not appear to disqualify her from possessing a firearm under the federal statute. It is not known whether the undisclosed third and final reason for the denial is legitimate.

[2] The Notice of Denial, which is attached to the Complaint, states that Defendant acted "[p]ursuant to Nebraska Statutes 69-2401 through 69-2425" (Filing No. 1 at CM/ECF p. 7).

"[A] custom can be shown only by adducing evidence of a 'continuing, widespread, persistent pattern of unconstitutional misconduct.'" *Id.,* at 634 (quoting *Mettler v. Whitledge,* 165 F.3d 1197, 1204 (8th Cir. 1999)). " A plaintiff must also show either that policymakers were deliberately indifferent to the misconduct or that they tacitly authorized it." *Id.* "From this standard it follows that '[l]iability for an unconstitutional custom ... cannot arise from a single act.'" *Id.* (quoting *McGautha McGautha v. Jackson County,* 36 F.3d 53, 57 (8th Cir. 1994)). Plaintiff does not present any allegations of an official custom in her Complaint.

"To establish the existence of a policy, [a plaintiff] must point to 'a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters.'" *Id.* at 633. "Because an official policy speaks for itself about the intent of public officials, proof of a single act by a policymaker may be sufficient to support liability." *Id.* (citing *McGautha,* 36 F.3d at 56); *see also Dean v. County of Gage,* 807 F.3d 931, 940-41 (8th Cir. 2015) ("An unconstitutional governmental policy can be inferred from a single decision taken by the highest official responsible for setting policy in that area of the government's business."). The Eighth Circuit has held that "Nebraska sheriffs make policy on behalf of their counties." *Dean,* 807 F.3d at 942.

Plaintiff's Complaint, however, fails to identify any "policy" that was adopted by Defendant in denying Plaintiff a certificate. The County cannot be held liable based solely on proof that Defendant's decision to deny Plaintiff a certificate contravened Neb. Rev. Stat. § 69-2404. *See Pineiro v. Gemme,* 937 F. Supp. 2d 161, 175 (D. Mass. 2013) (holding that police chief's decision with regard to plaintiff's application for firearms license did not itself constitute a municipal "policy" within the meaning of § 1983 and *Monell*); *see also Pembaur v. City of Cincinnati,* 475 U.S. 469, 486 (1986) (White, J., concurring) ("A sheriff, for example, is not the final policymaker with respect to the probable-cause requirement for a valid arrest. He has no alternative but to act in accordance with the established standard; and his deliberate or mistaken departure from the controlling law of arrest would not represent municipal policy.").

6

Plaintiff therefore cannot maintain a Second Amendment claim against Defendant in his official capacity.

Although Plaintiff seeks to recover $10 million in damages (Filing No. 1 at CM/ECF p. 6), her Complaint does not include any facts showing that she suffered any actual injury as a result of being denied a certificate to purchase a handgun. Thus, even if Plaintiff amended her Complaint to sue Defendant in his individual capacity, she would be limited to an award of nominal damages (*e.g.*, one dollar) for a proven violation of her Second Amendment rights. *See Williams v. Hobbs*, 662 F.3d 994, 1010 (8th Cir. 2011) ("Our precedents confirm that 'nominal damages are the appropriate means to vindicate constitutional rights whose deprivation has not caused an actual, provable injury,' and 'one dollar is recognized as an appropriate value for nominal damages.'") (quoting *Corpus v. Bennett*, 430 F.3d 912, 916 (8th Cir. 2005). Plaintiff also seeks "an injunction against Dunning in his official capacity having anything to do with our gun application" (Filing No. 1 at CM/ECF p. 4), but he is the official who is designated by law to act upon the application.

### B. Substantive Due Process

It is unclear whether Plaintiff is attempting to assert a substantive due process claim,[3] but the Supreme Court has held "that where a particular Amendment provides

---

[3] "To establish a violation of substantive due process rights by an executive official, a plaintiff must show (1) that the official violated one or more fundamental constitutional rights, and (2) that the conduct of the executive official was shocking to the contemporary conscience." *Truong v. Hassan*, 829 F.3d 627, 631 (8th Cir. 2016) (internal quotations and citations omitted). "To be conscience shocking, the government action must be 'truly irrational, that is, something more than ... arbitrary, capricious, or in violation of state law.'" *Draper v. City of Festus*, 782 F.3d 948, 953 (8th Cir. 2015) (quoting *Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir.1998) (en banc)). Plaintiff's allegations of misconduct do not rise to the "conscience shocking" level; at most, they suggest that the denial of the certificate was arbitrary, capricious, or in violation of Nebraska law.

an explicit textual source of constitutional protections against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing those claims." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (citations and quotation omitted). Plaintiff, of course, claims Defendant violated her Second Amendment right to keep and bear arms.

### C. Procedural Due Process

"The Supreme Court mandates a two-step analysis for procedural due-process claims: 'We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient.'" *Jenner v. Nikolas*, 828 F.3d 713, 716 (8th Cir. 2016) (quoting *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). "Protected liberty interests may arise from the Due Process Clause itself or from an expectation or interest created by state law or policies." *Id.* (citing *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)). "Generally, 'due process requires that a hearing before an impartial decisionmaker be provided at a meaningful time, and in a meaningful manner.'" *Booker v. City of Saint Paul*, 762 F.3d 730, 734 (8th Cir. 2014) (quoting *Coleman v. Watt,* 40 F.3d 255, 260 (8th Cir. 1994).[4] "The most important mechanisms for ensuring that due process has been provided are 'notice of the factual basis' leading to a deprivation and 'a fair opportunity for rebuttal.'" *Senty-Haugen v. Goodno*, 462 F.3d 876, 888 (8th Cir. 2006) (quoting *Wilkinson v. Austin,* 545 U.S. 209, 226 (2005); *see also Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14 (1978) ("The purpose

---

[4]"Within this general framework different situations may require different specific procedures." *Riggins v. Bd. of Regents of Univ. of Neb.,* 790 F.2d 707, 712 (8th Cir. 1986). "To determine what kind of process is due, courts balance three factors: '(1) the nature and weight of the private interest affected by the challenged official action; (2) the risk of an erroneous deprivation of such interest as a result of the summary procedures used; and (3) the governmental function involved and state interests served by such procedures, as well as the administrative and fiscal burdens, if any, that would result from the substitute procedures sought.'" *Booker*, 762 F.3d at 734 (quoting *Coleman,* 40 F.3d at 260).

8

of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending 'hearing.'").

For purposes of initial review, the court assumes that Plaintiff has a protected liberty interest in purchasing a handgun, by virtue of the  Second and Fourteenth Amendments. *See McDonald*, 561 U.S. at 791 (Fourteenth Amendment incorporates Second Amendment right to keep and bear arms for self-defense). Plaintiff may also have a protected liberty or property interest in obtaining a handgun purchase certificate under Nebraska law. *See Bagley v. Rogerson*, 5 F.3d 325, 328 (8th Cir. 1993) (When "a state statute gives specific directives to the decision maker that if the statute's substantive predicates are present, a particular outcome must follow, a liberty interest protected by the Fourteenth Amendment is created.") (quoting *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 463 (1989) (quotation marks and alteration omitted)); *Littlefield v. City of Afton*, 785 F.2d 596, 600 (8th Cir. 2000) (building permit applicant had property interest where city was required by state law to issue permit upon the applicant's compliance with applicable ordinances), *overruled on other grounds by Chesterfield Dev. Corp. v. City of Chesterfield*, 963 F.2d 1102, 1104 n. 2 (8th Cir. 1992).

Liberally construing the Complaint, Plaintiff claims she was denied procedural due process because the Notice of Denial was inadequate. That is, Plaintiff complains about Defendant's "vague and ephemeral statement" that she was denied a handgun purchase certificate "based [in part] on outside information obtained that cannot be released in this manner" (Filing No. 1 at CM/ECF p. 3). The question presented is whether Defendant, in failing to make a full disclosure of his reasons for denying Plaintiff a handgun purchase certificate, thereby deprived Plaintiff of a meaningful remedy for the alleged deprivation of her protected liberty or property interests. Plaintiff does not allege that she filed an appeal with the Douglas County Court as provided by Neb. Rev. Stat. § 69-2406.

Generally, a plaintiff is not required to exhaust state remedies as a prerequisite to bringing an action pursuant to § 1983. *See Patsy v. Bd. of Regents of Fla.*, 457 U.S. 496, 516 (1982). The Eighth Circuit, however, has "recognized an exception to *Patsy's* general rule that exhaustion of state remedies prior to bringing a section 1983 claim is not required," *Keating v. Neb. Pub. Power Dist.,* 562 F.3d 923, 929 (8th Cir. 2009). It is the rule in this circuit that "a litigant asserting a deprivation of procedural due process must exhaust state remedies before such an allegation states a claim under § 1983."" *Hopkins v. City of Bloomington*, 774 F.3d 490, 492 (8th Cir. 2014) (quoting *Wax 'n Works v. City of St. Paul,* 213 F.3d 1016, 1019 (8th Cir. 2000)), *see also Christiansen v. W. Branch Cmty. Sch. Dist.,* 674 F.3d 927, 935-36 (8th Cir. 2012) (affirming the dismissal of a complaint alleging post-deprivation procedural due process because the plaintiff failed to pursue available post-termination administrative remedies); *Crooks v. Lynch,* 557 F.3d 846, 848 (8th Cir. 2009) ("[T]his requirement is distinct from exhaustion requirements in other contexts. Rather, this requirement is necessary for a procedural due process claim to be ripe for adjudication.").[5]

This exhaustion requirement is "a nuanced exception to *Patsy* that applies to certain procedural due process claims." *Christiansen*, 674 F.3d at 935. The exception has only been applied to procedural due process claims involving alleged deprivations of *property* interests. *See Crooks*, 557 F.3d at 848-49 ("[A] litigant asserting a deprivation of [a property right in violation of] procedural due process must exhaust state remedies before such an allegation states a claim under § 1983.") (quoting, with bracketed modifications, *Wax 'N Works*, 213 F.3d at 1019); *Wagner v. Campbell*, No. 4:13CV3006, 2013 WL 12121993, at *5-7 & n. 11 (D. Neb. June 19, 2013) (holding that terminated public employee asserting stigma-plus procedural due process claim for

---

[5] "However, it is not necessary for a litigant to have exhausted available *postdeprivation* remedies when the litigant contends that he was entitled to *predeprivation* process." *Keating*, 562 F.3d at 929 (emphasis in original). In the present case, Plaintiff makes no claim that she was entitled to any predeprivation notice or hearing regarding her application for a certificate. She only complains about the postdeprivation Notice of Denial.

alleged damage to her reputation was not required to exhaust state remedies by filing a grievance); *Oglala Sioux Tribe v. Van Hunnik*, 993 F. Supp. 2d 1017, 1028 (D.S.D. 2014) (likewise recognizing that "[t]he Eighth Circuit [in *Crooks*] limited the holding in *Wax 'n Works* to suits seeking redress for loss of a property interest.").[6]  *See also Gibson v. Berryhill*, 411 U.S. 564, 575 (1973) (holding that plaintiffs were not required to exhaust state administrative remedies where "the question of the adequacy of the administrative remedy ... was for all practical purposes identical with the merits of [plaintiffs'] lawsuit"). Because Plaintiff is claiming that she was deprived of a Second Amendment liberty interest, and because her procedural due process claim only challenges the adequacy of the postdeprivation Notice of Denial (as opposed to the merits of the denial), this court has subject matter jurisdiction to consider the claim even if Plaintiff has not exhausted state remedies.

Unlike Defendant's decision to deny Plaintiff a handgun purchase certificate, his decision not to explain the third reason for the denial could constitute a "policy" decision for which the County has potential liability. Again, however, there is no claim of actual injury, so Plaintiff will be limited to seeking nominal damages or, if appropriate, injunctive relief.[7]

_____

[6] In *Crooks*, a terminated deputy sheriff brought a § 1983 action alleging that he was deprived of both a property interest in his position and a liberty interest in his reputation without procedural due process. The district court dismissed both claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. On appeal, the Eighth Circuit affirmed the dismissal of the liberty interest claim, but held that subject matter jurisdiction was lacking with respect to the property interest claim because state remedies had not been exhausted.

[7] Plaintiff requests the court to "direct the Defendant to show us the [outside] information" he said could not be released (Filing No. 1 at CM/ECF p. 4), but whether Plaintiff has a right to see this information is not directly at issue here. Plaintiff's procedural due process claim instead is concerned with whether the Notice of Denial adequately explains Defendant's reasons for denying Plaintiff a certificate.

### D. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment requires that States treat similarly situated persons alike. *Creason v. City of Washington,* 435 F.3d 820, 823 (8th Cir. 2006). To prevail on an equal-protection claim, a plaintiff must show that the challenged government action both had a discriminatory effect and was motivated by a discriminatory purpose. *See United States v. Armstrong,* 517 U.S. 456, 465 (1996). Plaintiff alleges that "Dunning is prejudiced and biased against [her]" (Filing No. 1 at CM/ECF p. 4), but the Complaint contains no facts indicating that Plaintiff was discriminated against.

## IV. CONCLUSION

Plaintiff's Complaint fails to state a claim upon which relief can be granted for alleged deprivations of Plaintiff's rights under the Second Amendment and the Equal Protection Clause of the Fourteenth Amendment. However, a plausible Fourteenth Amendment procedural due process claim is alleged.

IT IS THEREFORE ORDERED:

1.      Plaintiff's procedural due process claim against Defendant, in his official capacity only, may proceed to service of process. Upon being served, Defendant will be required to respond only to that claim.

2.      To obtain service of process on Defendant, Plaintiff must complete and return the summons form which the Clerk of the Court will provide.  The Clerk of the Court shall send ONE (1) Summons form and ONE (1) USM-285 form to Plaintiff together with a copy of this Memorandum and Order. Plaintiff shall, as soon as possible, complete the forms and send the completed forms back to the Clerk of the Court.  In the absence of the forms, service of process cannot occur.

3.      Upon receipt of the completed forms, the Clerk of the Court will sign the Summons form, to be forwarded with a copy of the Complaint and the Amended Complaint to the U.S. Marshal for service of process. The Marshal shall serve the Summons, Complaint, and Amended Complaint without payment of costs or fees. Service may be by certified mail pursuant to Federal Rule of Civil Procedure 4 and Nebraska law in the discretion of the Marshal. The Clerk of the court will copy the Complaint and Amended Complaint, and Plaintiff does not need to do so.

4.      Federal Rule of Civil Procedure 4 requires service of a complaint on a defendant within 90 days of filing the complaint.  However, because in this order Plaintiff is informed for the first time of these requirements, Plaintiff is granted, on the court's own motion, an extension of time until 90 days from the date of this order to complete service of process.

5.      Plaintiff is hereby notified that failure to obtain service of process on Defendant within 90 days of the date of this order may result in dismissal of this matter without further notice. A defendant has twenty-one (21) days after receipt of the summons to answer or otherwise respond to a complaint.

6.      The Clerk of the Court is directed to set a pro se case management deadline in this case with the following text: "March 2, 2017: Check for completion of service of summons."

7.      The parties are bound by the Federal Rules of Civil Procedure and by the Local Rules of this court.  Plaintiff shall keep the court informed of her current address at all times while this case is pending. Failure to do so may result in dismissal.

December 2, 2016              BY THE COURT:

                             s/ *Richard G. Kopf*
                             Senior United States District Judge

13